opinion of the court
Wilbur P. Trammell, J.
This action is brought to evict all the tenants in a rooming house located at 208 North Street. The petitioner purchased the property on or about the 15th of September, 1982 and served a 30-day notice to remove on or about the 30th of November, 1982.
In the interval, the respondents and the petitioner’s property manager had frequent clashes over repairs. During this same period, the tenants acting in concert selected one Janice Steen as their spokesperson.
The petitioner, an experienced property and rooming house owner, on October 5, 1982 filed an application for a rooming house license after being informed of its necessity by a Buffalo police officer. The license application traveling its normal bureaucratic course, reached the Erie County Health Department on October 13, 1982.
On October 15, the county health city inspector, Cuddihy, received a phone complaint from Janice Steen, the tenants’ representative and on the same day, visited the *848 premises at 208 North and was unable to gain admission to make an inspection.
Thereafter, on October 19, the inspector returned and made the inspection and submitted his findings to petitioner with the requisite demand for the repairs to be made and informed tenants that the rent need not be paid until the repairs were made.
During this same period, October 15 through October 19, the City of Buffalo Division of Licenses and Inspections was also notified by the tenant representative.
The matter came on to be heard before this court on January 13, 1983 after being adjourned from January 7, 1983. The respondent, at this time, asserted in writing the affirmative defense of retaliatory eviction predicated upon section 223-b of the Real Property Law. The petitioner, at the instance and request of the court after counsel had asserted that the petitioner and not the tenants had initiated and caused the inspections to be made, so testified.
Thereafter, on January 19, this court at the tenant’s request conducted a hearing.
The facts adduced upon the hearing established that the inspections were made at this time (Oct. 19), as a result of the tenant’s complaint and not as a result of the filing of the license application. The hearing also established that the claim of the petitioner is that the motivation for the eviction was not retaliation, but for his intended original use, to wit: an office building for his business.
The issues in this case are many and complex and properly, should be addressed by a much higher court.
Since the enactment of section 223-b, no reported case has addressed this problem so an examination of the competing substantial rights must be had.
Can this court, in light of the historical significance of property rights, deny the petitioner the right to recover the possession of his property after he has followed the procedures prescribed by the Legislature? In addition, the tenants have refused to pay rent and maintain that no rent or eviction can be had until the repairs are made. The Legislature by the enactment of section 223-b seems to have so intended.
*849 Section 223-b provides in essence that if the landlord serves a notice to quit within six months of a good-faith complaint by the tenant to a governmental authority, then a presumption of retaliatory motivation is created and the petitioner is denied the right to possession unless he can overcome the presumption by credible evidence and the tenant does not disapprove such by a preponderance of the evidence.
The petitioner contends that “the respondents desire to force the petitioner to use his property in a manner in which he chooses not to do so.”
The respondents contend that the petitioner does not have the “right to close the building, regardless, of his motives.”
It is now clear that the fundamental rule of our law of property must and has given way to social and political pressures resulting in reformative legislation, i.e., section 223-b of the Real Property Law.
The issue then, simply put, is from the facts adduced what motivated the landlord to institute this action? What was his state of mind? A trier of fact can judge a landlord’s state of mind only by examining its objective manifestations.
In this case, the landlord purchased an existing rooming house, proceeded to establish landlord-tenant relationships, commenced promised repairs, applied for license and served notice to quit after tenant’s complaint and harassment. The conclusion is inescapable; frustration and disgust, close it down, retaliatory action.
Having concluded that the presumption arises the petitioner contends that he has offered evidence, in the form of his testimony a portion which says: “The major thing was, I was doing the work, Carl, who was the manager over there was being harassed. The people were pulling down plaster in the basement, and when the inspector comes, he only knows what the existing condition is and it wasn’t getting anywhere. I’m not collecting rent and I can’t repair it to collect rent. I would like to make my offices there and it’s much easier for me to do that. I have a lot of other real estate and it runs smoothly and this one I bought for another purpose and I would like to run it that way.”
*850 It is petitioner’s contention that this testimony establishes a credible explanation of a nonretaliatory motive. This court cannot reach such a conclusion because when the petitioner testified on January 13, his basis for defeating the retaliatory defense was that he solely initiated the inspection. Not until the January 19 hearing was the office use asserted.
Having determined that the retaliatory defense has been established and no credible explanation of a nonretaliatory motive exists, it only remains to determine what, if anything, this court can do to effectuate the purpose of section 223-b.
To allow the tenants to remain in private property while violations not hazardous to their health without payment of rent would appear to contravene public policy.
To evict or intimidate tenants for complaining and reporting minor or major violations would set the goal of providing decent, safe and sanitary housing back 40 years.
One purpose of section 223-b is to enlist the army of tenants in the battle to obtain decent, safe and sanitary housing because the evidence is all too clear that government action alone is inadequate. However, the mere assertion of rights does not relieve one of responsibility: the responsibility to pay their fair share and the concomitant responsibility to maintain that which is decent, safe and sanitary.
Therefore, inasmuch as the defense of retaliatory eviction is equitable in nature, the decision of the court is that the petitioner is to have an immediate order of eviction unless the tenant pays to the Neighborhood Legal Services, the December and January rent, now due and to be held in escrow by them until the violations as set forth by the respective departments are remedied to the authorities’ satisfaction.